UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANDREW ARMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:17-CV-2360 CAS |
| JASON DAVIS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion for summary judgment filed by defendants Jason Davis, Cindy Griffith, and Alan Earls (collectively "defendants"). Pro se plaintiff Andew Arman, a Missouri prisoner, brings this action pursuant to 42 U.S.C. § 1983, alleging defendants violated his Eighth Amendment rights by use of excessive force and his First Amendment rights by moving him into a different housing unit in retaliation for filing grievances. Plaintiff opposes the motion for summary judgment and it is fully briefed. For the following reasons, the motion for summary judgment will be granted as to all defendants.

## *I. Background*

In January of 2017, plaintiff was incarcerated at the Potosi Correctional Center ("PCC") in Potosi, Missouri. Plaintiff filed this action on September 1, 2017 pursuant to 42 U.S.C. § 1983, alleging numerous violations of his civil rights stemming from an altercation between himself and PCC corrections officers on January 16, 2017. (Doc. 1). Plaintiff filed an amended complaint on October 16, 2017. (Doc. 10).[1] Named as defendants in the amended complaint are Jason Davis

---

[1] Plaintiff's amended complaint omitted all claims asserted in the original complaint against defendant Ham Payne Fum. As a result, the Court terminated Ham Payne Fun as a defendant in this action.

(corrections offer), Cindy Griffith (warden), and Alan Earls (deputy division director of adult institutions).

Upon review of plaintiff's amended complaint, this Court dismissed plaintiff's due process, deliberate indifference, failure to protect, supervisory liability, and equal protection claims for failure to state a claim. (Docs. 13, 14). As a result, only two claims remain: (1) use of excessive force by Jason Davis; and (2) retaliation by Cindy Griffith and Alan Earls.

Specifically, plaintiff alleges that while he was confined to a restraint chair and situated in a "submissive and non-threatening posture," Davis punched him in the face with a closed fist. (Doc. 10 at 5). Regarding Griffith and Earls, plaintiff claims that after he filed grievances and complaints regarding his alleged assault by Davis, Griffith and Earls transferred plaintiff to another housing unit "in an attempt to silence and hinder" him. (Id. at 6). Plaintiff sues the defendants in their individual capacities.

Defendants have filed a motion for summary judgment on the remaining two claims. In addition to seeking summary judgment on the merits, defendants also assert they are protected as government officials by the doctrine of qualified immunity.

## II. Legal Standard

**A. Summary Judgment Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

With this standard in mind, the Court accepts the facts below as true for purposes of resolving this motion for summary judgment.

**B. Qualified Immunity Standard**

Suits against officials in their individual capacity "seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). To establish liability, the plaintiff must show that the official, acting under color of state law, caused a deprivation of a federal right. Id. at 166; see Hayes v. Faulkner Cnty., Ark., 388 F.3d 669, 675 (8th Cir. 2004) (holding plaintiff "must prove: (1) the official's conduct deprived him of constitutional rights, and (2) the official's actions were taken under color of law").

Defendants may be entitled to qualified immunity for those claims brought against them in their individual capacities. McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009). "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

"To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Howard v. Kan. City Police Dep't., 570 F.3d 984, 988 (8th Cir. 2009). The court may first address either prong. Id. (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

*III. Facts*

On the morning of January 16, 2017, plaintiff was secured to a restraint bench in the Sally Port of PCC's Housing Unit 2 for the purpose of being evaluated by medical staff for suicide watch. After plaintiff was cleared to return to his cell, a corrections officer escorted plaintiff from the Sally

4

Port to the entryway of his cell. Plaintiff was directed to face the wall so his cell mate could be restrained by a second corrections officer. Plaintiff was "shoved against the wall" by the escorting corrections officer. Pl.'s Depo. at 21. Plaintiff resisted and testified: "I kind of snapped out and I remember kicking [a corrections officer] probably four of five times and I remember [the corrections officer] constantly asking me at this time to calm down." Id. As a result of the altercation, plaintiff was escorted back to the restraint bench.

While secured to the bench, plaintiff attempted to head butt and spit at the corrections officers, including Davis, which resulted in the officers forcing plaintiff to the ground. (Doc. 56-7).[2] Plaintiff testified that he "really can't remember what caused [him] to snap back out." Pl.'s Depo. at 22. A spit guard was placed over plaintiff's head. (Id. at 23-24, Doc. 56-7). Davis and a few other corrections officers attempted to escort plaintiff out of the Sally Port so he could be reevaluated by medical staff. (Doc. 56-3 at 5, 8, 12, 16-17, 19, and 21). Plaintiff attempted to elbow defendant Davis in the face. (Doc. 56-7, Davis Aff. ¶ 9). After plaintiff refused to walk on his own and declined a wheelchair, plaintiff was carried by four officers, including Davis, from Housing Unit 2 to Housing Unit 1 and placed in a second restraint chair. (Docs. 56-7, 56-3 at 5, 8, 12, 16-17, 19, and 21). While in the restraint chair, plaintiff attempted to head butt Davis. (Docs. 56-7, 56-3 at 13, 18, and 20; Davis Aff. ¶ 14).

The entirety of the incident was recorded by surveillance cameras within the PCC facility, including plaintiff's transfer from Housing Unit 2 to Housing Unit 1. (Doc. 56-7). Plaintiff and Davis are in view at all times throughout the video, except for a short period when Davis exits the room in Housing Unit 2 for less than a minute. At no point in the video is defendant Davis seen

---

[2] Doc. 56-7 is a DVD containing the PCC surveillance video relevant to the January 16, 2017 incident.

5

striking plaintiff in the face with his fist. The surveillance footage does not contain audio, but is visually clear and uninterrupted.

Following the events that transpired on January 16, 2017, plaintiff filed an Informal Resolution Request ("IRR"), a Grievance, and a Grievance Appeal. Plaintiff was subsequently transferred from a cell in Housing Unit 2 to Housing Unit 1. Regardless of his housing status within PCC, plaintiff was not prevented from, and does not allege that he refrained in any way from, filing his grievance paperwork or the instant lawsuit. Griffith and Earls submitted affidavits averring they reviewed plaintiff's grievances and "determined that the force used [by the corrections officers, including Davis] was the minimum amount necessary to control the situation and maintain prison order and security." Griffith and Davis further averred that they had nothing to do with and had no knowledge of plaintiff's transfer to a different cell in another housing unit. (Docs. 56-5, 56-6).

## IV. Discussion

### A. Excessive Use of Force by Defendant Jason Davis

Defendants argue they are entitled to summary judgment on the merits of plaintiff's excessive force claim against Davis because the "uncontroverted material facts demonstrate a prolonged incident of noncompliance and aggression on the part of [p]laintiff[.]" (Mem. at 3). Plaintiff argues that the surveillance video proves defendant Davis used excessive force when he punched plaintiff in the face while seated in the second restraint chair at Housing Unit 2.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. Hudson v. McMillan, 503 U.S. 1, 9-10 (1992). See also Burns v. Eaton, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment").

When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017). See also Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically"). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Whitley v. Albers, 475 U.S. 312, 321 (1986).

Plaintiff's claim of excessive use of force is limited to his allegation that Davis punched him in the face while plaintiff was sitting in a restraint chair in Housing Unit 2. The Court has reviewed the entirety of the surveillance video, which depicts the use of reasonable force by Davis to de-escalate plaintiff's combative behavior of attempting to head butt, spit on, and elbow corrections officers. Although there is no sound, the image quality is clear and plaintiff and Davis are in view at all relevant times. At no time is defendant Davis seen punching plaintiff with a closed fist. Davis's only physical contact with plaintiff's face was to turn or lower plaintiff's head to prevent him from head butting and spitting on officers.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). See also Coker v. Arkansas State Police, 734 F.3d 838, 841 (8th Cir. 2013) ("To the extent that [plaintiff's] story differs from what is shown on the [police car's dash-camera] video – for

example, [plaintiff] claims he did not run after falling off the motorcycle – we find that the district court correctly used the dash-camera recording to resolve any factual disputes up to this point."

Although plaintiff suggests without any evidentiary support that the video is edited, the running time stamps within the footage and continuity of the images establish otherwise. Because there is no evidence that defendant Davis punched plaintiff in the face as plaintiff alleges, or that any of the force he did use throughout the altercation on January 16, 2017 was malicious or sadistic, plaintiff fails to establish the violation of a constitutional right. As a result, defendant Davis is entitled to qualified immunity and the Court will grant summary judgment to defendant Davis on plaintiff's excessive force claim.

**B. Retaliation by Defendants Cindy Griffith and Alan Earls**

Under Eighth Circuit law, "A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right.'" Meuir v. Greene County Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993)). To prevail on a retaliation claim, plaintiff must show: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Spencer v. Jackson County Mo., 738 F.3d 907, 911 (8th Cir. 2013) (internal quotations and citations omitted).

However, prison officials may "transfer a prisoner for whatever reason or for no reason at all," Olim v. Wakinekona, 461 U.S. 238, 250 (1983), as long as the transfer is not "in retaliation for the exercise of a constitutional right." Goff, 7 F.3d at 737. Consequently, to prevail on a retaliatory

transfer claim, an inmate must show that transfer from one housing unit to another would not have occurred "*but for* an unconstitutional, retaliatory motive." Spencer, 738 F.3d at 912 (emphasis added) (citing cases). "Even at summary judgment, 'the burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive,' the transfer would not have occurred." Webb v. Hedrick, 409 F. App'x 33, 35 (8th Cir. 2010) (quoting Sisneros v. Nix, 95 F.3d 749, 752 (8th Cir. 1996)).

"Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any 'rights, privileges or immunities secured by the Constitution and laws' of the United States." Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs., 293 F.3d 472, 477 (8th Cir. 2002) (quoting 42 U.S.C. § 1983). The plaintiff in a § 1983 action must show that a defendant deprived him of a constitutional right while acting under color of state law. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). "A defendant will not be held liable under § 1983 unless he was personally involved in causing the deprivation of a constitutional right." Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir. 1978).

With respect to plaintiff's allegation that defendants Griffith and Earls transferred him to another housing unit "in an attempt to silence and hinder" him, the Court finds the facts do not support a claim of retaliation. Griffith's affidavit states: "I have no involvement with inmate movements from one housing unit to another within Potosi Correctional Center, and do not order any such movements or have any knowledge of such movements from one housing unit to another[.]" Griffith Aff. ¶ 6. Earls's affidavit states he "did not order any movement of Arman from one housing unit to another within Potosi Correctional Center," nor did he "have any knowledge of Arman's movement from one housing unit to another[.]" Earls Aff. ¶ 5. Because plaintiff has not

offered any evidence to counter Griffith or Earls's affidavits to show either of them had any personal involvement in plaintiff's transfer, plaintiff has failed to establish a claim for retaliation.

Moreover, plaintiff has not submitted any facts to show that the transfer to another housing facility was an adverse action, or that it was motivated by the exercise of his protected activity of filing grievances. A § 1983 retaliation claim requires a plaintiff to establish that the adverse action taken against him would chill a person of ordinary firmness from continuing the protected activity, here the filing of IRRs and grievances. See Spencer, 738 F.3d at 911. "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." Garcia v. City of Trenton, 348 F.3d 726, 728 (8th Cir. 2003). The Eighth Circuit applies the ordinary-firmness test in the First Amendment prisoner retaliation context. See Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007) (holding the record contained insufficient evidence that increasing the prisoner's work load would chill a prisoner of ordinary firmness from using the prison grievance process). The ordinary-firmness "test is an objective one, not subjective." Garcia, 348 F.3d at 729.

Plaintiff admitted that he was never verbally told the move was made in retaliation for filing his grievances, but instead drew his own conclusions. Pl.'s Depo. at 52. This is mere speculation and conjecture that is insufficient to raise a genuine issue of material fact. Plaintiff also agreed at deposition that daily life was generally the same between the two housing units. Id. at 54. Thus, plaintiff has not established a genuine issue of fact that his transfer was an adverse action, that a person of ordinary firmness would have been silenced or hindered from filing grievances because of such movement from one housing unit to another, or that the transfer was done in retaliation for his filing of grievances.

Because plaintiff fails to show the existence of a genuine issue of material fact as to any personal involvement in the transfer by Griffith and Earls, and there is no evidence that an unconstitutional retaliatory motive was the but-for cause of the transfer, plaintiff fails to establish the violation of a constitutional right. As a result, defendants Griffith and Davis are entitled to qualified immunity and the Court will grant summary judgment to defendant Griffith and Earls on plaintiff's retaliation claim.

*V.     Conclusion*

For the foregoing reasons, plaintiff's claims against defendants Davis, Griffith, and Earls's will be dismissed and defendants' motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Jason Davis, Cindy Griffith, and Alan Earls' motion for summary judgment is **GRANTED**. [Doc. 52]

**IT IS FURTHER ORDERED** that plaintiff's Seventh and Eighth Motions to Appoint Counsel are **DENIED** as **MOOT**. [Docs. 62, 64].

An appropriate order of dismissal and judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>24th</u> day of July, 2019.